IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAULETTE SANDERS, as parent and natural guardian of MYESHIA L. SANDERS, a minor, )<br><br>Plaintiff, )<br><br>v. )<br><br>JO ANNE B. BARNHART, Commissioner of Social Security, )<br><br>Defendant. ) | Civil Action No. 06-149 Erie |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Paulette Sanders, as parent and natural guardian of Myeshia L. Sanders, a minor, commenced the instant action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") under Titles XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1641(a)(3)(C). Plaintiff filed an application for child's SSI on October 1, 2000, alleging disability due to asthma (Administrative Record, hereinafter "AR", 28). Her application was granted on February 9, 2001 based on the Commissioner's conclusion that her asthma medically equaled Listing 103.03(C)(2) as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03(C)(2) (AR 263-268).

Plaintiff was subsequently notified that her benefits would be discontinued as of July 2004 since her disability had ceased as of June 2004 (AR 29; 31; 33). Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on May 12, 2005 (AR 62; 350-370). Following this hearing, the ALJ found that Plaintiff's asthma had medically improved and that she was no longer disabled because her impairment did not meet, medically equal, or functionally equal a listed impairment (AR 15-21). Her request for review by the Appeals Council was denied (AR 7-10), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny

Plaintiff's motion and grant Defendant's motion.

## I. Background[1]

Plaintiff was born on September 12, 1997, and was eight years old on the date of the ALJ's decision (AR 16; 28).

Plaintiff's medical records reflect that between November 16, 1998 and October 5, 2000, Plaintiff was treated by Raymond McAllister, M.D., for sinusitis, upper respiratory infections, bronchitis, coughs, a lung infection, eczema and pneumonitis (AR 205-224).

On August 18, 1999, Plaintiff was seen in the emergency room by Matthew McCarthy D.O., complaining of a fever and cough following treatment for pneumonia (AR 149). She was alert, active and in no acute distress (AR 149). Dr. McCarthy reported that she was negative for cough and shortness of breath, and her lungs were clear with some minor crackles in the bilateral bases (AR 149-150). An x-ray of her chest revealed atelectasis of the right upper lobe and she was assessed with acute bronchitis (AR 148). She was to continue the Pediacon DX and Cefzil (AR 150).

Plaintiff was evaluated by David M. Orenstein, M.D., at Children's Hospital of Pittsburgh for her chronic cough on August 19, 1999 (AR 157-158). Dr. Orenstein assessed her with a viral infection and recommended a trial of Albuterol if her symptoms continued (AR 158).

On August 31, 1999, Plaintiff was evaluated by Philip E. Gallagher, M.D., at Allergy and Asthma Associates of Northwestern Pennsylvania for a persistent cough (AR 162-163). Dr. Gallagher noted her prior treatment for pneumonia and previous course of antibiotics (AR 162). Dr. Gallagher reported that her cough could be due to resolving pneumonia or other infectious problem, persistent sinusitis or cough variant asthma (AR 162). Since her cough was improving, Dr. Gallagher recommended a course of Augmentin (AR 163).

---

[1]Plaintiff has attached additional medical evidence to her Brief in support of her motion. To the extent Plaintiff relies on this medical evidence, we may not consider this evidence since it was not submitted to the ALJ or the Appeals Council. In *Matthews v. Apfel*, 239 F.3d 589 (3rd Cir. 2001), the Third Circuit held that "when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ ... ." *Matthews*, 239 F.3d at 595. Plaintiff has failed demonstrate any of these three requirements.

On April 11, 2000, Plaintiff was seen in the emergency room complaining of a fever, a cough, occasional difficulty breathing and wheezing (AR 245). Chest x-rays showed bilateral patchy infiltrates in the lower lobes (AR 246). Plaintiff received nebulized treatment along with Tylenol for her fever (AR 246). Her respiratory status improved and her lungs were essentially clear at the time of her discharge (AR 246). She was diagnosed with acute pneumonia, dyspnea, cough and fever (AR 246).

Plaintiff returned to the emergency room on June 6, 2000, with a chief complaint of a cough and fever (AR 235). She was assessed with asthmatic bronchitis, received two nebulizer treatments and was discharged (AR 234-235).

Plaintiff presented to the emergency room on August 18, 2000 with difficulty breathing, a cough and congestion (AR 172). She was administered Proventil and steroids and her breathing improved, but she was kept overnight since she remained congested (AR 172). She was assessed with asthmatic bronchitis with underlying asthma suspected (AR 173). Plaintiff was discharged the next day (AR 173).

Plaintiff returned to the emergency room on December 4, 2000 complaining of cold symptoms, congestion and a cough (AR 228). She was assessed with an upper respiratory infection with a history of asthma (AR 227). She was prescribed antibiotics and discharged in good condition (AR 227).

On February 1, 2001, Plaintiff was seen in the emergency room complaining of a cough for one day (AR 257). On physical examination, her lungs were clear without rhonchi (AR 258). She was diagnosed with an upper respiratory infection, probably RSV, and asthma, with probable mild flare-up of her reactive airway disease (AR 258). She was prescribed a bedside vaporizer, Phenergan VC, a home nebulizer and Pediapred (AR 258).

Plaintiff was seen by Deborah Ranish, M.D., on September 18, 2002 complaining of a cough (AR 320). Dr. Ranish reported that her lungs were completely clear with no wheezing (AR 320). She was diagnosed with a cough and referred to an allergist for consideration of prophylactic medications (AR 320).

On January 2, 2003, Dr. Ranish treated Plaintiff for bronchitis (AR 319). At her check-up on March 31, 2003, no particular problems were reported (AR 318-319).

On August 31, 2003, Plaintiff presented to the emergency room complaining of cold symptoms for approximately one week but no wheezing (AR 298). Physical examination revealed no wheezes, rales or rhonchi (AR 298). Her final diagnosis was allergic rhinitis, she was prescribed Zyrtec and Pediacare and discharged in good condition (AR 298).

When seen by Dr. Ranish on September 30, 2003, no particular problems were reported (AR 317). Dr. Ranish noted that the Flovent inhaler had kept Plaintiff "out of trouble" and she had not used the nebulizer as much (AR 317). Plaintiff was also on Zyrtec which seemed to be helping "a lot" (AR 317). Physical examination revealed no wheezing in her lungs (AR 317). Dr. Ranish prescribed an Albuterol inhaler for home and school, refilled her Flovent inhaler and continued the Zyrtec (AR 317).

Plaintiff returned to the emergency room on October 17, 2003 for treatment of an asthma attack (AR 286). She exhibited upper respiratory symptoms and bilateral wheezes on examination (AR 286-287). Treatment notes reflected that she was in no acute distress, and following treatment she was discharged in good condition (AR 286-287).

On March 5, 2004, Cynthia Boheen, Plaintiff's kindergarten teacher, completed an assessment of Plaintiff's overall functioning (AR 271-278). Ms. Boheen found that Plaintiff had no problems in acquiring and using information, moving about and manipulating objects, or attending and completing tasks (AR 272-273; 275). She found that Plaintiff had a slight problem in using adequate vocabulary and grammar, but had no other problems in interacting and relating with others (AR 274). Ms. Boheen noted that Plaintiff had a slight problem in knowing when to ask for help, but no other problems in caring for herself (AR 276). Finally, Ms. Boheen indicated that she did not know whether Plaintiff took medication on a regular basis and noted that she did not miss school frequently due to illness (AR 277).

Plaintiff was seen in the emergency room on March 19, 2004 for complaints of a "barky cough" and nasal congestion (AR 281). On physical examination, she was in no respiratory distress and her breath sounds were clear with no wheezes, rales or rhonchi (AR 281-282). She was treated with an Albuterol inhaler, given a prescription for Prednisone and discharged in good condition (AR 282).

On May 6, 2004, Jay Newberg, M.D., a state agency reviewing physician, reviewed

Plaintiff's medical records and concluded that her asthma had medically improved (AR 300-301). Dr. Newberg found that Plaintiff had less than marked limitations in health and physical well-being and no other limitations (AR 302-303). Similarly, K. Loc Le, M.D., another state agency reviewing physician, concluded on June 21, 2004 that Plaintiff's asthma was not severe (AR 307-308).

Plaintiff returned to Dr. Ranish on July 27, 2004 complaining of nighttime wheezing for the past three weeks (AR 315). Physical examination revealed that her lungs were completely clear and clear on forced expiration (AR 315). Dr. Ranish added a Serevent discus for use at bedtime to her medication regime (AR 315).

Plaintiff was seen in the emergency room on November 1, 2004 for an upper respiratory infection (AR 341). On physical examination, no wheezes, rales or rhonchi were detected and she was subsequently discharged in good condition (AR 341). Plaintiff returned to the emergency room on November 13, 2004 with a cough, congestion and shortness of breath (AR 338). Mild wheezes were detected bilaterally, but x-rays revealed no active chest disease (AR 336; 338). She was diagnosed with asthma exacerbation and prescribed Prednisone (AR 338).

On December 24, 2004, Plaintiff was treated in the emergency room for acute bronchitis (AR 330). No wheezes, rales or rhonchi were detected on examination (AR 330). She was prescribed antibiotics and discharged in good condition (AR 330).

Plaintiff returned to the emergency room on March 9, 2005 and was treated for an upper respiratory infection (AR 327). Her lungs were reported as clear, and there were no wheezes, rales or rhonchi reported (AR 327). She was discharged in good condition (AR 327).

On May 5, 2005, Plaintiff was treated in the emergency room for ear pain and an upper respiratory infection (AR 324). Her respiratory examination was normal (AR 324). She was prescribed antibiotics and discharged in good condition (AR 324).

Finally, Plaintiff was seen by Dr. Gallagher on May 10, 2005 for her chronic cough (AR 343). Plaintiff reported a cough for the prior three months with wheezing on only one occasion (AR 343). She reportedly used Serevent at bedtime, Albuterol as needed and Flovent very sporadically (AR 343). Dr. Gallagher noted that Plaintiff had a couple of hospitalizations for pneumonia when she was much younger (AR 343). On physical examination, Dr. Gallagher

reported that her lungs had some scattered inspiratory and expiratory wheezes which were somewhat rhonchous, and spirometry showed mild obstruction (AR 343). Dr. Gallagher formed an impression of chronic cough, and changed Plaintiff's medications to Nasonex nasal spray once a day, Advair twice a day, and Albuterol as needed (AR 343).

Plaintiff's mother, Paulette Sanders, testified at the administrative hearing held by the ALJ. Mrs. Sanders testified that Plaintiff was in regular classes at school and had no restrictions from participating in gym class (AR 356-357). She testified that Plaintiff's medications were Advair, Nasonex spray, Zyrtec and Albuterol, and that she used a nebulizer approximately once or twice per week (AR 357-358; 365). Ms. Sanders claimed that she frequently took Plaintiff to the emergency room due to asthma and/or allergy flare-ups (AR 358). She would receive a nebulizer treatment and an antibiotic and/or steroids if it had progressed to bronchitis (AR 358). Ms. Sanders indicated that within a month prior to the hearing, Plaintiff had been treated with steroids and antibiotics twice (AR 358). She claimed that Plaintiff's sleep was interrupted approximately three to four nights a week with breathing problems, for which she would use a Flovent inhaler and/or cough medicine (AR 359-360).

According to Ms. Sanders, Plaintiff would begin to cough if she ran while playing, but had no problems performing household chores and did not miss many days at school (AR 361). She usually took Plaintiff to the emergency room for treatment if the doctor's office was closed or if it was an emergency (AR 363). Ms. Sanders felt that Plaintiff's asthma had worsened in the last three to four months prior to the hearing (AR 364).

Following the hearing, the ALJ issued a written decision finding that Plaintiff's asthma was still severe, but that it had medically improved since the award of disability in October 2000 (AR 15-21). He found that Plaintiff's impairments no longer met Listing 103.03(C)(2), and that her impairments did not meet, medically equal, or functionally equal a listed impairment as of June 30, 2004 (AR 18-20). The ALJ concluded that Plaintiff was no longer eligible for child's SSI under the Act and that the cessation of disability on June 30, 2004 was proper (AR 21). Her request for review by the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner. She subsequently filed this civil action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

The Commissioner has prescribed a three-step sequential evaluation for determining whether a child's disability continues. 20 C.F.R. § 416.994a(b)(1)-(3). First, the ALJ must determine whether there has been any "medical improvement" in the child's condition. 20 C.F.R. § 416.994a(b)(1). "Medical improvement" is defined as "any decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision ... ." 20 C.F.R. § 416.994a(c). Second, the ALJ determines whether, despite improvement, the impairment currently meets or medically equals the listing that the impairment met at the time of the award of disability. 20 C.F.R. § 416.994a(b)(2). If the impairment does, the child's disability will be found to continue. 20 C.F.R. § 416.994a(b)(2). If the impairment does not, the ALJ will proceed to the third and final step and determine whether the child is currently disabled under the rules for determining eligibility in initial disability claims for children. 20 C.F.R. § 416.994a(b)(3).

At this final step, the ALJ determines whether: (1) the child has a severe impairment or combination of impairments; (2) whether the impairment meets the severity of any impairment contained in the Listings; and (3) whether the impairment is functionally equal to those set forth in the Listings. 20 C.F.R. § 416.994a(b)(I)-(iii). To establish functional equivalence, a child must have a medically determinable impairment or combination of impairments that results in marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(b)(1). These domains include: acquiring and using information; attending and

completing tasks; interacting and relating with others; moving about and manipulating objects; ability to care for oneself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(iv).

Plaintiff's sole argument before this Court is that her asthma condition has not improved and that her condition continues to medically and/or functionally meet the requirements for Listing 103.03(C)(2).[2] *Plaintiff's Brief* p.8. Listing 103.03(C)(2) requires:

> C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic brochodilators with:
>
> • • •
>
> 2. Short courses of corticosteroids that average more than 5 days per month for at least three months during a 12-month period[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03(C)(2). The ALJ found that at the time Plaintiff was initially awarded benefits, namely, February 9, 2001, she had severe asthma with exacerbations requiring aggressive medical management, including inpatient hospitalization and emergency room treatments (AR 16). The ALJ concluded however, that based upon the medical evidence Plaintiff's asthma condition had improved since that time (AR 17). He further found that Plaintiff's asthma condition did not meet or medically equal those currently listed in the regulations (AR 17-18). Finally, the ALJ concluded that out of the six domains of functioning, she had no limitations in four of the domains, and only suffered from a less than marked limitation in two of the domains (AR 19-20).

We are of the opinion that the ALJ's conclusions are supported by substantial evidence. With respect to whether Plaintiff's asthma condition has improved or continues to medically meet Listing 103.03(C)(2), we first observe that the medical evidence does not demonstrate that Plaintiff exhibited persistent low-grade wheezing between acute attacks as required by the Listing. Her respiratory examinations in September 2002, August 2003, September 2003, March 2004, July 2004, November 2004, December 2004, March 2005 and May 2005 revealed no

---

[2]Plaintiff has not challenged the ALJ's conclusions with respect to whether her asthma condition medically meets and/or functionally equals the other listed criteria as set forth in Listing 103.03. Consequently, our discussion focuses solely on the 103.03(C)(2) criteria.

wheezing (AR 281; 298; 315; 317; 320; 324; 327; 330; 341), and when seen by Dr. Gallagher in May 2005, she indicated that she had experienced wheezing on only one occasion in the three months prior (AR 343).

In addition, as the ALJ observed, while Plaintiff still had symptoms of asthma and received periodic emergency room care, the nature and frequency of her treatment did not satisfy the requirements of Listing 103.03(C)(2) (AR 17). Plaintiff was prescribed corticosteroids on only two occasions during the relevant time frame. In November 2004 she was prescribed Prednisone and in May 2005 she was prescribed Advair (AR 338; 343). At the remaining emergency room visits in August 2003, October 2003, November 2004, December 2004, March 2005 and May 2005, Plaintiff was only prescribed antibiotics and/or decongestants (AR 286-287; 298; 327; 330; 341). Moreover, as recognized by the ALJ, Plaintiff reported no particular problems to Dr. Ranish when seen in March 2003 and September 2003 and her examinations were normal (AR 317-319). We note that at the September 2003 examination, Dr. Ranish reported that Plaintiff's Flovent inhaler had kept her "out of trouble" and that she had not used the nebulizer that much (AR 317). Finally, we observe that the ALJ's finding that Plaintiff's asthma had medically improved was supported by the opinion of Dr. Newberg, the state agency reviewing physician, who reviewed all of the medical evidence of record and reached the same conclusion (AR 300-301).

Likewise, we find no error in the ALJ's conclusion that Plaintiff's asthma condition did not functionally equal Listing 103.03(C)(2). As indicated previously, in order to functionally equal a listed impairment, the evidence must demonstrate marked limitations in two domains of functioning or extreme limitations in one area. 20 C.F.R. § 416.926a(a). The ALJ found Plaintiff had no limitations in acquiring and using information; attending and completing tasks; interacting and relating with others; or moving about and manipulating objects; and a less than marked limitation in her ability to care for herself and in her health and physical well-being. (AR 19-20).

All of these findings are supported by the record. As the ALJ noted, Plaintiff's kindergarten teacher, Ms. Boheen, reported that she had no problems in acquiring and using information, moving about and manipulating objects, or attending and completing tasks (AR

9

272-273; 275).  While Plaintiff had only a slight problem in using adequate vocabulary and grammar, she had no other problems in interacting and relating with others (AR 274).  Ms. Boheen noted that Plaintiff had a slight problem in knowing when to ask for help, but no other problems in caring for herself (AR 276).  Ms. Boheen's assessment was supported by the testimony of Plaintiff's mother.  The ALJ observed that Ms. Sanders testified that Plaintiff was able to carry out various household chores, was capable of learning and finishing assignments, was able to attend school on a regular basis, related well with others, was able to participate in gym class with no restrictions in her activity level at school, handle her personal needs, and lead a fairly normal existence (AR 19-20).  We therefore find no error in this regard.

## IV. Conclusion

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAULETTE SANDERS, as parent and natural guardian of MYESHIA L. SANDERS, a minor, )<br><br>Plaintiff, )<br><br>v. )<br><br>JO ANNE B. BARNHART, Commissioner of Social Security, )<br><br>Defendant. ) | Civil Action No. 06-149 Erie |

## ORDER

AND NOW, this 27th day of December, 2006, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 5] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 7] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Paulette Sanders, as parent and natural guardian of Myeshia L. Sanders, a minor.

The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.